## THE ILLINOIS STEEL COMPANY

*v.*

## JAMES L. O'DONNELL *et al.*

*Filed at Ottawa June 15, 1895.*

1. CORPORATIONS—*claims of officers for loans—effect of subsequent insolvency.* Subsequent insolvency of a corporation which has borrowed money, when solvent, from officers or directors, will not affect their rights of action to recover such loans and enforce their securities.

2. SAME—*renewal notes after insolvency—preferences.* Judgment notes of a corporation, given as renewals after its insolvency, are in the same position, with respect to the right of the corporation to make preferences, as the prior judgment notes for which the renewals were given.

3. SAME—*preference to relative of director valid.* Relationship of a creditor of an insolvent corporation to one or more of its directors or officers will not prevent the giving of a valid security as a preference to such creditor.

4. SAME—*power of directors to dispose of property and give preferences.* Directors and officers of an insolvent corporation can dispose of its property, in good faith, to pay or secure corporate debts, even though the result is to give some creditors a preference over others.

5. SAME—*securities to directors given in good faith after insolvency.* Valid securities may be given to its directors by a corporation, although it is in fact insolvent, where it is a going concern doing a large business, and the securities are given for money loaned at the same time, in good faith, to enable the company to carry on the purposes of its incorporation.

6. INTEREST—*when unearned interest must be deducted on entering judgment.* Unearned interest must be subtracted from the amount of recovery in entering judgment before maturity by the voluntary act of the payee of notes, on which interest has been paid in advance.

*O'Donnell v. Illinois Steel Co.* 53 Ill. App. 314, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is a writ of error to the Appellate Court for the Second District, wherein the Illinois Steel Company is plaintiff in error, and James L. O'Donnell, assignee of Henry Fish & Sons, and others, are defendants in error. This writ brings before the court the same record and decree that have been in part reviewed in the appeal of *Blair* v. *Illinois Steel Co.*

The facts necessary to an understanding of the questions involved are as follows: On December 10, 1892, the Will County National Bank and Joseph Stephen filed their bill in the circuit court of Will county, alleging, among other things, that the complainant Stephen had recovered a judgment against the Joliet Enterprise Company, a corporation of this State engaged in manufacturing barbed wire at Joliet; that execution had been issued and returned unsatisfied; that said corporation was insolvent, and praying for the appointment of a receiver, the dissolution of the corporation, the ascertainment and enforcement of the individual liability of the stockholders and directors, and for such other, further and different relief as might be agreeable to equity.

On December 24, 1892, the Cleveland Rolling Mill Company and the Illinois Steel Company filed their bill in said court, alleging, among other things, that the Cleveland Rolling Mill Company had recovered a judgment against the Joliet Enterprise Company, December 1, 1892, for $17,464.67, on which execution was immediately issued, and which remained wholly unpaid and unsatisfied; that said Joliet Enterprise Company was also indebted to the Illinois Steel Company in the sum of $169,751.04; that Charles M. Fish, George M. Fish, Henry M. Fish, Francis H. Connell and John T. Brooks were directors and officers of said Joliet Enterprise Company; that said directors, Charles M. Fish, George M. Fish and Henry M. Fish, together with Henry Fish, their father, composed the banking firm of Henry Fish & Sons, which said firm made an assignment on November 30, 1892;

156—40

that on the same day, and before said assignment, the defendant corporation confessed judgment in said circuit court in favor of said firm of Henry Fish & Sons for $176,420.96, on which execution immediately issued and was levied on all the property of the corporation; that on the same day said corporation executed and delivered a trust deed to Chauncey J. Blair, trustee, securing various creditors to the amount of about $159,000; that said corporation at that time was, and for many months prior thereto had been, insolvent, and that said confession of judgment and trust deed were unlawful attempts to prefer creditors, and praying that James L. O'Donnell, assignee of said firm of Henry Fish & Sons, insolvents, should be enjoined from enforcing said judgment, and that the judgment and trust deed should be set aside and declared null and void; that the trust deed be decreed to be a general assignment for the benefit of creditors; that the assets of the corporation should be marshaled, administered and distributed among all the creditors of the corporation, that the liabilities of stockholders, directors and officers should be determined and enforced, and that complainants might have such other and further relief as to equity should seem meet. The whole property of the corporation, except such as was in the custody of the sheriff under the execution in favor of Henry Fish & Sons and certain attachment writs, had been in the possession of a receiver appointed under a bill filed in the United States court, but on the same day that said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company was filed, the bill filed in the United States Circuit court was dismissed for want of jurisdiction, and George H. Munroe, the former receiver, was appointed receiver under said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company, and took possession as such.

On December 30, 1892, the court, on its own motion and in pursuance of the stipulation and agreement of

parties, consolidated the two suits so begun in the Will county circuit court, and the appointment of Munroe as receiver was extended over both.

The Joliet Enterprise Company was defaulted on the bill to wind up the corporation, but answered the bill which questioned the judgment confessed and the trust deed, and contested that bill. James L. O'Donnell, assignee for Henry Fish & Sons, in his answer claimed the right to enforce the judgment in favor of that firm for the full amount, for the benefit of their creditors. The trustee and beneficiaries under the trust deed, in their answer claimed the benefits conferred by the trust deed, and insisted on its validity. A cross-bill was also filed by Chauncey J. Blair, trustee, and certain of the beneficiaries named in the trust deed, for the foreclosure of the same. The Cleveland Rolling Mill Company and the Illinois Steel Company answered the cross-bill, challenging the validity of the trust deed, and setting out substantially the same matters averred in their original bill concerning it.

One Joseph S. Wiley and the Ashley Wire Company were brought in as defendants to the cross-bill to foreclose the trust deed, and they answered, and in turn filed a cross-bill, setting up certain judgments; but the further proceedings as to these parties are not necessary to be stated in order to understand the points at issue in this writ of error.

As a result of the hearing the court found that the judgment recovered by confession in favor of the firm of Henry Fish & Sons was based upon six judgment notes of the Joliet Enterprise Company, for $29,000 each, which were given for money actually loaned to said corporation by said Henry Fish & Sons; that said corporation was insolvent March 31, 1892, and thereafter the directors had no right to loan it money and take judgment notes therefor; that four of said judgment notes were renewals of like notes for loans made before March 31, 1892, and

two were loans made after that date; that the corporation had no power to make said last two judgment notes because three members of said banking firm were members of the corporation; that $1000 included in the judgment as attorney's fees could not be sustained, and that $1420.96 was wrongfully included as interest; and it was decreed that said judgment should stand for $116,000 only,—the principal of the four notes held valid.

From the decree that was rendered by the circuit court an appeal was taken to the Appellate Court for the Second District by James L. O'Donnell, assignee of Henry Fish & Sons, and by other parties. By the judgment of the Appellate Court the decree of the circuit court was affirmed in all respects, except as to the judgment by confession in favor of the firm of Henry Fish & Sons against the Joliet Enterprise Company, and as to such judgment the decree was reversed and the cause remanded, with directions to sustain said judgment for the amount for which the same was entered, except $1420.96, which had erroneously been included as interest and which was ordered to be deducted as of the date of said judgment, leaving said judgment as of such date. at the sum of $175,000, which judgment, with interest thereon, was ordered to be preserved as a lien upon the property of said Joliet Enterprise Company in favor of said firm of Henry Fish & Sons, and their assignee, under the judgment, execution and levy.

On November 30, 1892, the Joliet Enterprise Company, though at that time really insolvent, through its directors and officers conveyed to Mary V. Fish certain real estate in payment of a prior indebtedness due to her, and she accepted the deed in full of her claim. Mary V. Fish was the mother of Charles M. Fish, George M. Fish and Henry M. Fish, three of the five directors of the Joliet Enterprise Company. One of the contentions here is, that the conveyance thus made to Mary V. Fish by her own sons, acting as directors of the company, was an

unlawful preference, which the company had no right, in its then condition, to make.

E. Parmalee Prentice, and Williams, Holt & Wheeler, for plaintiff in error:

That an insolvent corporation may not, by payments, conveyance or securities in favor of any director, create a preference over other creditors, we assume to be the unquestioned law of this court. *Atwater* v. *Bank*, 152 Ill. 605. See, also, *Beach* v. *Miller*, 130 Ill. 102 ; *Roseboom* v. *Whittaker*, 132 id. 81. Upon the general proposition, see, also, Cook on Stockholders, sec. 661; *Corbett* v. *Woodward*, 5 Sawyer, 403; Wait on Insolvent Corp. secs. 156, 157.

The directors of a corporation cannot act as agent or in the interest of any creditor in securing for him any preference. A director cannot represent both the corporation and other parties in making a contract.

George S. House, E. A. Otis, and P. C. Haley, for defendants in error.

Mr. Justice Baker delivered the opinion of the court:

The principal matters for consideration on this writ of error are the claims that the preference given by the insolvent Joliet Enterprise Company to Mary V. Fish was unlawful and invalid, and that the judgment for $176,420.96, rendered on the 30th day of November, 1892, against the Joliet Enterprise Company and in favor of Henry Fish & Sons, was and is illegal, and should be set aside as an unlawful preference.

On November 30, 1892, the Joliet Enterprise Company was insolvent. At that time, and for some time prior thereto, it was indebted to Mary V. Fish in the sum of $15,000 for borrowed money, and she held the judgment note of the corporation therefor. She was the mother of Charles M. Fish, George M. Fish and Henry M. Fish, three of the five directors of the company. On the day mentioned, the corporation, through its directors and

officers, conveyed to her certain real estate in payment of the indebtedness due her, and she accepted the deed in satisfaction of her claim. The value of property conveyed was not greater than the amount of the debt for which it was given.

It is the settled law of this State that the directors and officers of an insolvent corporation have the power to dispose of corporate property, in good faith, for the purpose of paying or securing corporate debts, and that they may do this even though the result is that some creditors are given a preference over others. (*Reichwald* v. *Commercial Hotel Co.* 106 Ill. 439; *Bouton* v. *Smith*, 113 id. 481; *Burch* v. *West*, 134 id. 258; *Ragland* v. *McFall*, 137 id. 81; *Glover* v. *Lee*, 140 id. 102; *Warren* v. *First Nat. Bank*, 149 id. 9; *Butler Paper Co.* v. *Robbins*, 151 id. 588; *Gottlieb* v. *Miller*, 154 id. 44.) And the fact of relationship of the person to whom preference is given, to one or more of the directors or officers of the corporation, does not invalidate the transaction, if it is otherwise fair and free from fraud. (*Schroeder* v. *Walsh*, 120 Ill. 403; *Ragland* v. *McFall, supra; Gottlieb* v. *Miller, supra; Blair* v. *Illinois Steel Co.* unreported.) There was no error in sustaining the validity of the conveyance to Mrs. Fish.

The firm of Henry Fish & Sons was composed of Henry Fish, the father, and his three sons, George M. Fish, Charles M. Fish and Henry M. Fish, and it was engaged in the banking business at Joliet. The Joliet Enterprise Company was engaged in carrying on an extensive business in the manufacture of barbed wire. Said George M., Charles M. and Henry M. were, as already stated, three, and a majority, of its board of directors. The firm had for some years been loaning large sums of money to the corporation. On the morning of November 30, 1892, the firm held six judgment notes of the company, for $29,000 each, amounting in the aggregate to $174,000. At that time it was manifest that both the bank and the corporation were insolvent, and that both would be com-

pelled to suspend payment. Among other things that were done during the morning of that day, a judgment was entered upon said judgment notes in favor of Henry Fish & Sons for $176,420.96 and costs, and execution immediately issued thereon and a levy made on the property of the corporation. Later in the day the firm of Henry Fish & Sons made a voluntary assignment for the benefit of its creditors, and James L. O'Donnell, the principal defendant in error herein, became the assignee.

In the decree in equity that was afterwards entered in the circuit court of Will county, the judgment by confession was sustained to the extent of $116,000, and to that extent only, and for the amount for which it was sustained it was given priority. But the court found and decreed that the Joliet Enterprise Company was insolvent on and after March 31, 1892; that while four of the judgment notes were renewals of like notes for loans made prior to said date, yet the other two of said judgment notes, of $29,000 each, upon which the judgment by confession was based, were for loans made after that date and after insolvency, and that said corporation then had no power to make said two last mentioned judgment notes, because three of the partners in the banking firm of Henry Fish & Sons were directors and officers of the insolvent corporation. And the court also found and decreed that an attorney's fee of $1000 was unlawfully and improperly included in the judgment, and also that $1420.96 interest was wrongfully included therein. O'Donnell, the assignee of Henry Fish & Sons, appealed from the decree to the Appellate Court, and both errors and cross-errors were assigned in that court. The judgment of the Appellate Court sustained the findings and decrees of the circuit court in regard to the sums of $116,000 and $1420.96, respectively, but reversed its findings and decrees in regard to the two notes of $29,000 each and in regard to the attorney's fee of $1000. It reversed the decree as to the judgment by confession, and remanded

the cause, with directions to sustain said judgment for the amount for which the same was entered, except $1420.96 which had erroneously been included as interest, and which was ordered to be deducted as of the date of said judgment, leaving said judgment as of such date at the sum of $175,000, and which judgment, with interest thereon, was ordered to be preserved as a lien upon the property of said Joliet Enterprise Company in favor of said firm of Henry Fish & Sons and their assignee, under the judgment, execution and levy.

It is conceded by all parties that the deduction of $1420.96 was properly made from the judgment by confession. It was included in that judgment as interest, whereas the notes were not due at the time of rendition of judgment, and interest on them up to times of maturity had been paid. The judgment also contained another element of double and unlawful interest which a court of equity should correct. Interest had already been paid in advance up to the dates of the maturity of each of the six notes, respectively, and upon the entry of judgment before maturity, at the election and by the voluntary act of the payees of the notes, this unearned interest should have been subtracted. The directions given by the Appellate Court are so modified as that the just and equitable proportion of the interest paid shall be deducted from the face of the notes and the judgment.

The circuit court, in its decree, found that the Joliet Enterprise Company was insolvent on the 31st day of March, 1892, and from and after that date. For the purposes of the decision we will assume the correctness of this finding.

Four of the judgment notes on which the judgment was based, the principal of said notes amounting to $116,000, were renewals of other like judgment notes, and represented money actually loaned to the corporation by said banking firm of Henry Fish & Sons, said notes having their origin in loans made and judgment

notes given on December 18, 1890, October 3, 1891, October 31, 1891, and February 16, 1892, respectively. The giving of a judgment note is the giving of a security or preference. (*Young* v. *Clapp*, 147 Ill. 176.) Although this may be so, yet there can be no serious question of the propriety of the action of both of the courts below in sustaining the judgment so far as it has for its foundation the four renewal notes mentioned above. The renewal judgment notes were only continuations of the original judgment notes given during the solvency of the company. The substance of the matter is, that each loan of money and judgment note given therefor continued to be one and the same transaction, without reference to the number of like judgment notes given in renewal, and without regard to the fact that the last renewals may have been after corporate insolvency. (*Saylor* v. *Daniels*, 37 Ill. 331.) And the law is, that the directors or officers of a solvent corporation, acting in good faith, may deal with it and loan it money and take security therefor, and that the subsequent insolvency of the corporation will not affect their rights of action to recover such loans or enforce their securities. *Mullanphy Savings Bank* v. *Schott*, 135 Ill. 655.

The circuit court found that two of the judgment notes, for $29,000 each, had their origin in loans made by Henry Fish & Sons to the insolvent company,—one on June 13, 1892, and the other on October 4, 1892. It held that the taking of security for such loans, by way of warrants of attorney to confess judgment, or by way of judgment notes, was inequitable and unauthorized as against the creditors of the Joliet Enterprise Company, and forbidden by law, and it therefore set aside and annulled the judgment as to $58,000, that being the amount of the principal debts secured by said two notes. Upon the appeal of O'Donnell, the assignee of the insolvent firm of Henry Fish & Sons, the Appellate Court held

otherwise in regard to said two notes, as already herein sufficiently appears.

The two loans of money, amounting in the aggregate to $58,000, were made by the banking firm to the corporation in good faith, and the judgment notes were given therefor at the times that the loans were respectively made. The assets of the corporation were not diminished by the transactions. It got the benefit of the moneys so borrowed, and they were used in completing the new plant that it constructed at a cost of some $280,000, and in conducting and keeping on its feet its large manufacturing business. The banking firm did not obtain, or anticipate receiving, any advantage to itself by loaning the money to the corporation, other than that of getting interest on the money that it loaned. The corporation, at the time of these transactions, was embarrassed for want of means,—in fact insolvent, in the sense that its liabilities exceeded its assets,—and it was forced to adopt various temporary shifts and expedients for the purpose of raising money. At the same time it was a going concern; had an extensive plant, which had cost it over a quarter of a million of dollars, and was unincumbered; was employing some three hundred workmen; had on hand manufactured products worth about $200,000, and was doing a large business and meeting its commercial obligations. The securities that were given by the corporation to the banking firm,—*i. e.*, judgment notes,—were not outside of the usual order of things, for the evidence shows that it was, and for many years had been, the custom and usage of the banking firm to require judgment notes in all cases of actual and absolute loans of money, and that the same custom and usage obtained with all of the other banks and banking firms doing business in the city of Joliet.

There is a marked difference between a case where a mortgage or other preference is given by an insolvent corporation to a director or officer to secure a pre-exist-

ing indebtedness, and a case like this, where the corporation, though in fact insolvent, in the sense above stated, is a going corporation that is seeking to accomplish the objects of its incorporation, and the security is given to directors for moneys actually and in good faith loaned, at the time the security is given, to such embarrassed corporation, and for its benefit. In *Harts* v. *Brown*, 77 Ill. 226, the coal company had expended all of its means in sinking a shaft, etc., and owed debts to the amount of from $23,000 to $33,000. This court held that the directors had power to borrow money from one of their number and execute to him a mortgage on the corporate property. It was there said (p. 231): "The company had expended all their means, and had failed to realize their expectations, and had reached a point at which the enterprise must be abandoned unless means could be procured to further prosecute the work, and, so far as we can see, there was nothing reckless or unbusiness like in effecting this loan for the time, at the rate of interest or on the security given. They all seem to be according to the usual course of business." In *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587, the corporation became very much embarrassed, and borrowed money from Marbury, who was one of its directors, and secured him by a note and trust deed. The court found that the loan was made in good faith, to assist the corporation in its embarrassments, and held that no rule of law prohibited a director from loaning money to the corporation in good faith when it was needed for its benefit, and that such a rule would deprive a corporation of the aid of those most interested in it and most likely to render it assistance.

The views we entertain in respect to the particular matter now under consideration are well expressed in certain language used by Justice HARLAN in delivering the opinion of the Circuit Court of Appeals in the late case of *Sutton Manf. Co.* v. *Hutchinson*, 11 C. C. App. 320. We quote the language referred to, which is as follows:

"A corporation is not required, by any duty it owes to creditors, to suspend operations the moment it becomes financially embarrassed, or because it may be doubtful whether the objects of its creation can be attained by further effort upon its part. It is in the line of right and duty when attempting, in good faith, by the exercise of its lawful powers and by the use of all legitimate means, to preserve its active existence and thereby accomplish the objects for which it was created. In such a crisis in its affairs, and to those ends, it may accept financial assistance from one of its directors, and by a mortgage upon its property secure the payment of money then loaned or advanced by him, or in that mode protect him against liability then incurred in its behalf by him. Of course, in cases of that kind a court of equity will closely scrutinize the transaction, and in a contest between general creditors and a director or managing officer who takes a mortgage upon its property, will hold the latter to clear proof that the mortgage was executed in good faith, and was not a device to enable him to obtain an advantage for himself over those interested in the distribution of the mortgagor's property.—*Richardson* v. *Green*, 133 U. S. 30, 43; *Twin Lick Oil Co.* v. *Marbury*, 91 id. 587, 588."

A rule that would prevent directors and officers of financially embarrassed corporations, acting in good faith and for the apparent benefit of such corporations, from loaning them money and at the same time taking from them security for repayment,—the terms and the securities being such as are in accord with the usual course of business,—would be highly injurious to corporations themselves, and frequently detrimental to the interests of their creditors. The line of demarkation that separates valid from invalid preferences to directors or officers of insolvent corporations lies between already incurred liabilities and liabilities assumed by going corporations at the time the security is given and taken.

In our opinion there was no error in the ruling of the Appellate Court that the judgment notes given for the moneys lent and advanced on June 13, 1892, and on October 4, 1892, were legal and valid securities and preferences, even as against the claims of the general creditors of the corporation. It is not intended, or considered, that anything herein decided or said is in conflict with the decisions in *Beach* v. *Miller*, 130 Ill. 162, and subsequent cases in line therewith.

Some other and minor objections to the decree are suggested, but we think that a part of them are, in principle, disposed of by what we have already said, and that the others are not well taken, and do not require special notice.

With the slight modification in the directions to the circuit court that has already been adverted to, the judgment and order of the Appellate Court are affirmed. The plaintiff in error will pay the costs made in this court.

*Judgment affirmed.*