6 So.2d 893

## FIRST NAT. BANK OF BIRMINGHAM v. HUDDLESTON.

6 Div. 898.

Supreme Court of Alabama.

March 12, 1942.

See, also, 239 Ala. 528, 195 So. 755.

Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellant.

A. Leo Oberdorfer, of Birmingham, for appellee.

BROWN, Justice.

The former appeal, reported as First National Bank of Birmingham et al. v. Huddleston, 239 Ala. 528, 195 So. 755, was from a final decree rendered on pleadings and proof, and the decree was reversed because of the absence of the Malones, held to be necessary parties, because, as stated in the opinion of the court, "They and not the bank are those on whom the burden of such a contingency would fall." 239 Ala. 531, 195 So. 758.

The bill was filed on August 12, 1936, as a creditor's bill to marshal the assets of an alleged insolvent corporation—Sun Creek Farms, Inc.—under the influence of § 7062 of the Code of 1923, now § 103, Title 10, Code of 1940.

To give the bill equity, the corporation must be insolvent, there must be more than one creditor, and the corporation must have assets, at the time of the filing of the bill, within the grasp of the court, subject to marshaling and equitable distribution among its creditors. Code of 1940, § 103, Title 10; Faircloth v. Farmers' Guano Co., 204 Ala. 148, 85 So. 395; Cassells Mills v. First National Bank of Gadsden, 187 Ala. 325, 65 So. 820; People's Auto Co. v. Manufacturers' Finance Acceptance Corporation, 226 Ala. 370, 147 So. 145.

Some of the questions presented on the record were decided on the former appeal. That decision is not here questioned, but both parties cite and rely on it. Among other questions decided was that the appellant bank and the Malones could not in their dealings ignore the Sun Creek Farms, Inc., that it was entitled to the rents, incomes and profits accruing to it through its farming operations. That the bank in its dealing with the property and the rents, incomes and profits thereof was the alter ego of the corporation. That the complainant, the mortgage creditor, had no lien on the farm rents. That "when the bank transferred the balance in the account of the Sun Creek Farms [March 31, 1933] to what amounts to the personal agency credit of the Malones, it was not improperly appropriating the funds of that corporation to itself, if it was not improper to apply them to the payment of the claim of the Malones as a creditor of the corporation. If we treat the transaction as the payment to the bank of an overdraft due it by the Malones, it was still a payment to the Malones in substance and effect. The right to do this, insofar as other creditors are concerned, depends upon whether *there existed a right to pay the Malones in preference to this mortgage creditor.*" [Italics supplied.]

Without stopping to debate the question as to whether or not a cause of action arising from the misapplication of funds, without fraud, constitutes an asset within the grasp of the court where the funds themselves can not be traced and identified, we proceed to a decision of the question "whether there existed a right to pay the Malones" in preference to complainant as of March 31, 1933.

At the inception of the Malone agency, May 14, 1930, the Sun Creek Farms, Inc.,

was a going concern in possession of its property, 4,000 acres of farm lands in Lowndes County, Alabama, of the value of from $18,590 to $22,280, and engaged in farming operations. The property was covered by mortgage held by the complainant and the interest on the mortgage debts was due and complainant, the sole creditor, at that time was pressing for payments, and taxes on the property were due to be paid. The corporation did not have cash on hand to pay the same, and Malone who was not a managing agent or director of the corporation but a majority stockholder, advanced to the Sun Creek Farms, Inc., $800 to be used by the corporation's alter ego, the bank, in meeting these pressing demands, with the understanding and agreement that said sum was to be returned to Malone, when the funds arising from the corporate income would permit. Of the $800 so advanced by Malone, $741.-76 was paid to the complainant, on the date the advancement was made, and the balance applied to relieving the property of the tax liens by the payment of the taxes.

The Sun Creek Farms continued to operate until February 13, 1933, when the complainant demanded and took possession of the lands, and subsequently, in the very depths of the depression, foreclosed the said mortgage and bid the property in for $5,000 taking title in himself. The proceeds arising from the farm operations, between May, 1930, and February, 1933, were devoted to operating expenses, the payment of taxes and payments of interest on the mortgage debt, with the exception of $838.37 constituting the balance in the hands of the corporation, when complainant took possession and foreclosed. Of necessity, after the corporation was deprived of control of its property it ceased to be a going concern and closed its activities transferring said sum of $838.37 in payment of said sum so advanced by Malone with less than legal interest.

■ "It is generally held that a preference by a corporation to a stockholder is valid to the same extent as if he were a general creditor. The reason advanced for allowing the preference is that a stockholder does not, except in the exercise of his right to participate in the selection of its officers, have any control over a corporation not equally open to other creditors. If he becomes a creditor, he had the same right to receive payment and the same means of redress in case it is not made as do the other creditors. * * *

■ "According to the practically uniform opinion, in the absence of a statutory restriction a corporation may, although insolvent, secure an officer or stockholder for a contemporaneous loan made to it fairly and in good faith. This is especially true in the case of a corporation which, though insolvent, is nevertheless a going concern and the officers of which intend, with reasonable expectations of success, that it shall continue business as a result of the loan. The burden, however, is on the secured director to show the good faith of the transaction." 13 American Jurisprudence, 1151, 1152 §§ 1274-1275; In re Lake Chelan Land Co., 9 Cir., 257 F. 497, 5 A.L.R. 557 Annotation; Illinois Steel Co. v. O'Donnell, 156 Ill. 624, 41 N.E. 185, 187, 31 L.R.A. 265, 47 Am.St.Rep. 245.

In the last cited case it was observed: "There is a marked difference between a case where a mortgage or other preference is given by an insolvent corporation to a director or officer to secure a pre-existing indebtedness, and a case like this, where the corporation, though in fact insolvent [that is, in the sense that its liabilities exceeded its assets], is a going corporation, that is seeking to accomplish the objects of its incorporation, and the security is given to directors for moneys actually and in good faith loaned at the time the security is given to such embarrassed corporation, and for its benefit."

■ The agreement of the corporation, made through its alter ego, the bank, to repay the advancement when the income from the lands was sufficient to do so, constituted a valid oral trust as to said proceeds, which a court of equity will recognize and protect, in the absence of intervening superior rights or equities. City Bank & Trust Co. v. Gardner, 225 Ala. 136, 142 So. 535, and authorities there cited.

■ Inasmuch as the complainant mortgage creditor received the full benefit of the money advanced, it would be wholly inequitable and unjust to surcharge the accounts between the corporation and Malone, or hold the bank liable for returning the money in accordance with the oral trust.

The result is that the complainant was the sole and only creditor of the Sun Creek Farms, Inc., at the time the bill was filed,

and it had no assets to be marshaled. Complainant has failed to sustain the averments and equity of his bill.

The decree of the circuit court is therefore reversed and one here entered dismissing the bill, with costs against the complainant, appellee.

Reversed and rendered.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.