Plaintiff/Appellee United Parcel Service initiated this cause against defendant/appellant View-All, Inc., premised upon open account, and for work and labor done. The complaint was later amended to include as individual defendants, George H. Deyo, Sam Grasso, John Poczabut, and Leonard Sansone, in their capacity as directors of View-All. As ostensible class *Page 1199 
representative, United Parcel Service sought certification of this cause as a class action, alleging conversion, breach of fiduciary duty, and wrongful preference by defendants in their disbursement of monies to creditors of View-All, subsequent to the sale of its assets to Cerro Corporation.
The trial court granted the prayer for class action designation; added Magnavox CATV System, Inc., as a party plaintiff;[1] and granted dismissal against certain remaining plaintiffs;[2] and after an extensive hearing, entered the following order:
"FINDINGS OF FACT
"CONCLUSIONS OF LAW AND JUDGMENT
 "The Court, sitting without a jury, having heard the evidence presented in the above action, renders judgment for the Plaintiff and The Class represented by the Plaintiff, in the total amount of $71,679.08, against the Defendants, George H. Deyo, Sam Grasso, Dr. John S. Poczabut and Leonard H. Sansone, jointly and severally.
 "As the basis for its judgment, the court makes the following findings of fact and conclusions of law.
 "1. The individual Defendants, George H. Deyo, Sam Grasso, Dr. John S. Poczabut and Leonard H. Sansone were directors of View-All, Inc., at all pertinent times pertaining to this action and exercised control over View-All, Inc. (hereafter `View-All').
 "2. At a time when it was insolvent, View-All was caused by its directors to sell its assets to Cerro Corporation for the Price of approximately $449,500, paid to View-All in cash. The directors loaned various sums of monies in substantial amounts to View-All with knowledge that View-All was insolvent at the time said loans were made. View-All's insolvency continued from the time of such loans to after the time of the repayment of the loans.
 "3. The Directors named in the preceding paragraph had knowledge of View-All's insolvency, which existed for some time prior to the sale of all of View-All's assets to Cerro Corporation. The Directors knew that View-All was still insolvent after the sale to Cerro.
 "4. From the cash sales price, View-All was caused by its directors to pay some of its creditors. However, Plaintiff and The Class represented by Plaintiff were not paid the amounts owed each of them by View-All.
 "5. The directors, instead of paying the creditors referred to above, caused View-All to pay themselves and other directors the sum of approximately $199,401.92 in settlement of their own personal loans to View-All, which payments were made at a time when View-All was insolvent.
"CONCLUSIONS OF LAW
 "The Defendants, George H. Deyo, Sam Grasso, Dr. John S. Poczabut and Leonard H. Sansone willfully disregarded their obligation to cause View-All to pay Plaintiff and The Class and instead fraudulently and jointly conspired to pay and did so pay themselves on their personal loans to View-All, thereby fraudulently violating the fiduciary duty owed by them as directors of View-All to Plaintiff and The Class.
 "Each of said defendants, George H. Deyo, Sam Grasso, Dr. John S. Poczabut and Leonard H. Sansone, having jointly committed the fraud, is jointly and severally liable to Plaintiff and The Class for the full amount owed by View-All to Plaintiff and The Class, plus interest on said amount. *Page 1200 
 "All moneys recovered on the judgment rendered in this case shall constitute a fund for the benefit of the Plaintiff and the members of The Class as specified herein. Said funds shall be administered by counsel for the Plaintiff and The Class and a final report of such administration shall be filed with this Court.
". . . .
 "The total judgment awarded herein represents the amounts owed Plaintiff and each member of The Class by View-All together with interest at 6% per annum from the date on which each debt owed Plaintiff and each member of The Class became due. The respective amount of the judgment to be distributed to Plaintiff and each member of The Class is as follows:
 "Name of Class Member Amount of Judgment Awarded ---- — ----- ------ ------ — -------- -------
"Wilford Wyler Company $30,002.12
"Magnavox CATV Systems, Inc. 15,758.55
"Gamco Industries, Inc. 7,549.98
"Permag Dixie Corporation 97.66
 "Jean B. Geist, surviving partner of View-All Pacific 15,179.67
"United Parcel Service 1,688.26
"Wong's Circuits Company Ltd. 1,206.40
 "Commercial Plastics Supply Corp. 196.44 ---------- "$71,679.08
". . . .
 "It is by the Court ORDERED, ADJUDGED and DECREED THAT Plaintiffs, Wilford Wyler Company, Magnavox CATV Systems, Inc., Gamco Industries, Inc., Permag Dixie Corporation, Jean B. Geist, surviving partner of View-All Pacific, United Parcel Service, Wong's Circuits Company, Ltd., and Commercial Plastics 
Supply Corp. have and recover of the Defendants, George H. Deyo, Sam Grasso, Dr. John S. Poczabut and Leonard H. Sansone, the sum of $71,679.08 together with cost of this proceeding for which let execution issue.
". . . .
 "It is by the Court, ORDERED, ADJUDGED and DECREED, that judgment is rendered against all other Class Action Plaintiffs and in favor of the Defendants.
 "ORDERED, ADJUDGED and DECREED, this 3rd day of September, 1981."
View-All appeals from that judgment. We reverse.
 FACTS
View-All was an Alabama corporation with its principal place of business in Anniston, Alabama. The company manufactured components for sale to the cablevision industry. The business was never successful and was insolvent almost from the date of its inception.
The individual defendants herein were, at all times material to these proceedings, directors and controlling shareholders of View-All, holding approximately 80% of the company's outstanding stock. In addition to their initial capitalization of View-All, the defendants/directors, from time to time since the date of its origination, personally advanced monies to View-All for the purpose of keeping it solvent. Debentures and personal loans of the defendants/directors totalling $312,700 were capitalized during 1973 by turning them into stock to reduce the debt of the corporation.[3]
The insolvency of View-All was such that it sought a sale of its assets to Cerro Corporation. Thereafter, a sales contract was entered into on or about March 8, 1974. Following bulk sales notice to all creditors of View-All, the sale to Cerro was consummated for approximately $449,500.[4] *Page 1201 
 SUMMARY OF DISTRIBUTION OF FUNDS FROM ASSETS SALE: Asset Sale Price 03/08/74 $449,500 Banks/secured creditors 103,000 GTE Sylvania 24,000 Payment of Jones judgment 12,400 Payment to trade accounts (net settlement) 77,600 Payment on principal of shareholder notes 133,000 ------- Subtotal balance 99,500 Offset by Cerro for accrued items, etc. 3,000 ------- Deposit to Escrow 06/06/74 96,500 Final payment Fed. and Ala. taxes 8,400 Payment Emkay Mach. Co. judgment 14,000 Payment to former View-All sales reps 3,400 Attorney fees (settlement) 6,300 Payment to additional trade accts. (settlements) 2,700 Final payment on principal of stockholder notes 63,200 Interest received on escrow funds 1,500 ------- 99,500
The plaintiffs herein are parties who received no monies in either the March or September 1974 payments. View-All was later dissolved.
 IN PERSONAM JURISDICTION
Certain nonresident defendants were served by certified mail. The crux of the supporting affidavit was to the effect that the nonresident defendants "were officers, directors, stockholders or otherwise in control of" View-All, so as to support in personam jurisdiction in the courts of this state.
Defendants' challenge to the sufficiency of such service of process, and to the propriety of jurisdiction, is bottomed upon the allegation that the individual defendants' mere presence on the board of directors of an Alabama corporation is insufficient to meet the "minimum contacts" mandate of ARCP 4.2 (a)(2)(I).
Professor Moore summarizes the current constitutional requirements in this area as follows:
 "The first requirement is that there must be some minimum contact with the state which results from an affirmative act of the defendant. But it is not necessary that the defendant have been in the state or that it have had agents there. . . .
 "In addition to some minimum contact with the state, it must be fair and reasonable to require the defendant to come into the state and defend the action. . . . . [I]n determining what is fair and reasonable, the court may consider factors associated with the doctrine of forum non conveniens, but need not give them overriding importance. . . .
 "Based as they are on notions of fairness and reasonableness, the Supreme Court decisions do not permit a simple generalization of the rule pertaining to in personam jurisdiction over foreign corporations. . . .
 "If there are substantial contacts with the state, for example a substantial and continuing business, and if the cause of action arises out of the business done in the state, jurisdiction will be sustained. If there are substantial contacts with the state, but the cause of action does not arise out of these contacts, jurisdiction may be sustained. But if there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction. If there is a minimum of contacts and the cause of action does not arise out of the contacts, there will normally be no basis of jurisdiction, since it is difficult to establish the factors necessary to meet the fair and reasonable test."
2 J. Moore, Federal Practice, Para. 4.25, pp. 4-258 through 4-267 (2d Ed. 1982).
Under the "minimum contacts" standard of in personam
jurisdiction, maintenance of the suit must not offend "traditional notions of fair play and substantial justice."Williams v. Barrington Ford, 402 So.2d 903 (Ala. 1981);International Shoe Co. v. Washington, 326 U.S. 310,66 S.Ct. 154, 90 L.Ed. 95 (1945). Admittedly, the simplicity of such language rarely obtains in its application. We think, however, that Defendants here were engaged in a substantial and continuing business within this state, and that plaintiffs' claim arose out of this course of action. Consequently, we *Page 1202 
hold there did exist the requisite minimum contacts to require each individual defendant to come within the boundaries of this state and answer plaintiffs' allegations. International ShoeCo. v. Washington, supra. See McGee v. International LifeInsurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223
(1957).
 FRAUD AND CONSPIRACY
Appellees (plaintiffs below) contend in their complaint that appellants, by giving themselves preferences over other creditors from the proceeds of the sale of the assets of View-All Products, Inc., converted funds which belonged to View-All, and that this amounted to fraud as regards the various appellees. The trial court agreed, finding that such a preference constituted a violation of the directors' fiduciary duty owing to the creditors as a class. We disagree.
There can be no doubt that a cause of action for fraud will lie by a creditor against the directors of a corporation if such action is supported by the evidence. E.g., O'Connor Mining Manufacturing Co. v. Coosa Furnace Co., 95 Ala. 614,10 So. 290 (1891).
The mere fact of the giving of preferences to themselves by the directors does not, however, in and of itself, constitute fraudulent conduct. At common law, the settled rule in this state allowed an insolvent corporation to make a transfer of its assets to one or more of its directors in payment of bona fide debts due from the corporation, thereby preferring such directors to other creditors in payment of its corporate debts.Corey v. Wadsworth, 118 Ala. 488, 25 So. 503 (1897). The trial court never found the debts to the directors not to be bona fide, and, on the contrary, referred to them in its order several times as personal loans.
Any relief available to the plaintiff class/appellees exists in Ala. Code 1975, § 10-2-201, by which the legislature adopted the "trust fund doctrine," which had been repudiated by this Court at common law.
Section 10-2-201 provides:
"§ 10-2-201. Assets of insolvent corporations.
 "The assets of insolvent corporations constitute a trust fund for the payment of the creditors of such corporations which may be marshaled and administered in courts having jurisdiction in equitable matters in this state. (Acts 1959, No. 414, p. 1055, § 75.)"
Under the trust fund doctrine, the directors and officers of an insolvent corporation cannot give themselves a preference in the payment of corporate debts over other general creditors; however, as a creditor of the corporation, he is not subordinate to other creditors of the same class merely by virtue of being a director or stockholder. First National Bankof Birmingham v. Huddleston, 239 Ala. 528, 195 So. 755 (1940).
In other words, the relief available to the plaintiff class/appellees is not a dollar-for-dollar recovery of the debts owed them by the corporation from the directors who gave themselves preferences. The relief in equity is a marshaling of all the assets of the insolvent corporation for a pro rata administration to all creditors, including the director/creditors. The relief is an equitable one and does not depend on the fraudulent conduct or lack of good faith on the part of the directors.
To invoke the equity jurisdiction of the court under § 10-2-201, a complaint must allege the insolvency of the corporation and ask for the relief of marshaling and administering the assets. Cassells Mills v. First National Bankof Gadsden, 187 Ala. 325, 65 So. 820 (1914). This is no less true under our current Alabama Rules of Civil Procedure.
The complaint in the instant case falls short in that regard. Whether such relief is still timely is a determination to be made by the trial court on remand.
We emphasize that our determination of the instant case is made pursuant to Ala. Code 1975, § 10-2-201. This section was *Page 1203 
repealed and no comparable section was enacted by the new Alabama Business Corporation Act, Ala. Acts 80-633. We make no determination here how a similar question would be decided under the current statute.
The instant case is, therefore, due to be reversed and remanded in accordance with the foregoing instructions.
REVERSED AND REMANDED.
All the Justices concur.
[1] Defendants originally omitted Magnavox CATV System, Inc., from a list furnished by the trial court of plaintiffs answering defendants' interrogatories.
[2] Interrogatories propounded by defendants were answered by approximately 20 of the original class action plaintiffs. On motion by defendant View-All, the action was dismissed as to all plaintiffs not answering the interrogatories.
[3] An information statement given the stockholders of View-All shows that loans totalling $225,000 by the defendants/directors were contributed to the company in December 1971 to retire certain debts and increase working capital. An additional $20,000 was loaned in 1972 to increase working capital, and $12,000 was paid individually by the directors in settlement of a lawsuit against the company.
[4] Of this amount, $252,404.80 was initially paid by Cerro to View-All. The difference between the purchase price ($449,500) and the amount actually received by View-All ($252,404.80) was apparently paid directly by Cerro to secured creditors.