SPORTING GOODS DISTRIBUTORS,
INC., an Alabama Corporation,
Plaintiff,

v.

James WHITNEY, Defendant.

No. 79–0029.

United States District Court,
N. D. Florida,
Gainesville Division.

Aug. 11, 1980.

Timothy M. Grogan, Michael Gillion, Mobile, Ala., for plaintiff.

Nancy E. Yenser, Gainesville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HIGBY, District Judge.

Sporting Goods seeks to enforce an Alabama judgment against Whitney, to recover money allegedly advanced to Whitney pursuant to an employment contract, and to recover the value of goods Whitney allegedly kept when his employment with Sporting Goods terminated. Theories advanced are breach of contract, that the money and goods are due on account, that they were a loan, and that keeping the goods was a conversion. In addition to asking for payment of the money due and the goods' value, Sporting Goods in its conversion count seeks punitive damages. The citizenship of the parties is diverse, and over $10,-000.00 is in dispute. The court has jurisdiction. 28 U.S.C. § 1332(a). The parties have stipulated that all causes of action are governed by Florida law, except the judgment enforcement action which is ruled by Alabama jurisprudence. There are two major disputes between the parties. They disagree upon the terms of their oral agreement. And they disagree upon the validity of the Alabama judgment.

## FINDINGS OF FACT

James Whitney worked as a salesman for Sporting Goods Distributors, Inc., from December of 1975 through April of 1978. He met Sporting Goods' representative Logan Sharpless in Zephyrhills, Florida. In Zephyrhills the two men negotiated an oral contract of employment. Whitney agreed to sell Sporting Goods' products in south and central Florida and to help collect accounts he sold. He was to pay his own expenses. In exchange for Whitney's services, Sporting Goods agreed to pay Whitney a commission on all sales made and collected. The percentage ranged fifteen percent on regularly priced merchandise to three percent on sale merchandise to two percent on guns. Freight costs and discounts were deducted from prices before the commission was fig-ured. The agreement was strictly for recompense by commission. Sporting Goods did not agree to provide Mr. Whitney a salary, expenses or any other remuneration. It did, however, allow Mr. Whitney to make draws against his anticipated commissions. The draws were in effect loans against commissions to be paid. Mr. Whitney chose to receive a $200.00 a week draw.

Mr. Whitney functioned essentially as a conduit for Sporting Goods. He received orders from customers and forwarded the orders to Sporting Goods. Except for rare instances of unusual merchandise, Sporting Goods in turn shipped the merchandise directly to the consumer. If necessary, Mr. Whitney sometimes collected the accounts. But customers usually paid Sporting Goods direct.

Some items were too small or too bulky for Sporting Goods to profitably ship to its customers. These items Sporting Goods sent Whitney, who, in turn, delivered them to the customers. When the relationship ended in April of 1978, Mr. Whitney had some of this merchandise. He also had merchandise which had been shipped to him for use as samples in his selling. Whitney was willing to return the merchandise but did not because he could not obtain a receipt before or at the exact time of return. His overly cautious position was due to distrust of his former employer.

The parties agree the relationship ended in April, 1978. At that time Mr. Whitney owed Sporting Goods $9,218.57 in draws which had not been paid by commissions earned. Between April, 1978, and the date of the trial in this matter, collections were made on accounts Mr. Whitney sold. Those collections entitled him to commissions of $219.73, reducing Whitney's obligation to Sporting Goods for draws to $8,998.84. In April, 1978, Whitney had $2,797.29 worth of Sporting Goods' property in the form of samples, items he held for delivery, and some returns. By the time of trial, he had returned all but $722.45 worth of the property. At the trial's close, Mr. Whitney returned $68.95 more worth of the property, leaving unaccounted for only $653.50 worth.

Sporting Goods was and is an Alabama corporation headquartered in Mobile, Alabama. Mr. Whitney was and is a Florida citizen. During his employment with Sporting Goods Mr. Whitney traveled only twice to the corporation's Mobile headquarters. The trips were for instruction, merchandise inspection, and to pick up samples. All were instigated by Sporting Goods. All his other dealings with Sporting Goods, such as forwarding orders, were through the mails or by telephone.

Before bringing this action Sporting Goods sued Whitney in the Circuit Court of Mobile County, Alabama. Mr. Whitney was served a copy of the complaint, pursuant to the Alabama Rules of Civil Procedure, by certified mail. Mr. Whitney received the complaint but did not respond because he thought service was not effective unless made by a law enforcement officer. Eventually on January 30, 1979, the Alabama Circuit Court entered a default judgment for Sporting Goods against Whitney. The judgment awarded $12,015.86 under Count III which sought to recover the commissions and property discussed earlier. Under Count V, which sought damages for conversion of the property, the court awarded $25,000.00 in punitive damages.

## CONCLUSIONS OF LAW

■ Sporting Goods' first cause of action seeks to enforce its Alabama default judgment against Whitney. Whitney's defense alleges Alabama's exercise of jurisdiction over him denied him the Due Process guaranteed by the Fourteenth Amendment to the United States Constitution. Whitney was served pursuant to Alabama Rule of Civil Procedure 4.2(a)(2). The rule specifically allows service of process upon any nonresident defendant when that person has had sufficient contacts with Alabama such that service of process upon him would be constitutionally permissible. Service under the statute is as far-reaching as due process permits. *Semo Aviation, Inc. v. Southeastern Airways Corp.*, 360 So.2d 936 (Ala.1978). So the only issue in this attack upon Alabama's jurisdiction over Mr. Whit-

ney is the "federal question of whether subjection of a nonresident . . . to the jurisdiction of Alabama courts comports with federal due process." *DeSotacho, Inc. v. Valnit Industries, Inc.*, 350 So.2d 447, 449 (Ala.1977).

The basic test for determining the constitutionality of a state court's exercise of its jurisdiction over an unwilling nonresident defendant is whether the defendant's contacts with the forum state are such that requiring the defendant to defend a particular suit in the forum state would be reasonable. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Exercise of jurisdiction is constitutional if the defendant has had minimum contacts with the forum state such that exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *Mann v. Frank Hrubetz & Co., Inc.*, 361 So.2d 1021 (Ala.1978). "The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). *See also, Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979).

■ Five basic factors should be considered. They are: (1) the nature and quality of the defendant's contacts with the forum state, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the interests of the forum state in providing the tribunal which resolves the dispute, and (5) the convenience of the parties. *Aaron Ferer and Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206 (8th Cir. 1977). Factors four

and five are secondary considerations. *Id.,* fn. 5. The inquiry is peculiarly factual. *E. g., Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978). It is the defendant's contacts with the forum state, not contacts with the plaintiff which are relevant. *Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir. 1979).

 Whitney's contacts with Alabama were few. He made two brief visits to Alabama, both after the contract in dispute was entered and before the alleged breach and conversion. Whitney's only other contacts with Alabama were phone calls and letters to Sporting Goods' Mobile headquarters. The contacts were not important and in no way could be construed as placing Whitney in a position where he relied on and enjoyed the benefits of Alabama's laws. The visits were brief and not important to a business which was carried on primarily through the United States mail. As significant contacts with Alabama the phone calls and letters are particularly inadequate. Interstate communication is today an almost inevitable accompaniment to doing business and cannot fairly be considered a contact justifying exercise of jurisdiction. *See, Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir. 1979); *Aaron Ferer and Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206 (8th Cir. 1977). Whitney's two visits are peripherally related to the cause of action. He made them during performance of the contract involved. But they are not related to either the breach or the conversion and were at Sporting Goods' urging.

 Contacts Whitney did not have are much more significant and demonstrate the constitutional defectiveness of the Alabama judgment. The contract in dispute was made in Florida. Performance was in Florida. Any breach occurred in Florida. In short, every significant event happened in Florida. The significant party-state contacts actually were between Sporting Goods and Florida, not between Whitney and Alabama.

The secondary factors also call for finding Whitney's contacts insufficient to justify the Alabama court exercising jurisdiction over him. Alabama has no particular interest in this type of litigation. Thus the situation is not comparable to *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). All the significant events occurred in Florida. The contract was made in Florida; witnesses other than the parties will most likely be found in Florida. The breach occurred in Florida, as did the conversion. Sporting Goods does business in Florida and thus is much better equipped to come to Florida than Mr. Whitney is to go to Alabama.

After consideration of all the relevant facts, I must conclude traditional notions of fair play would be offended by requiring Whitney to travel to Alabama to defend himself. He never had a contact with Alabama which in any way put him in the position of relying upon the protection of Alabama's law. To hold otherwise would mean anyone who worked for an out-of-state business or purchased from an out-of-state corporation would be subjecting himself to jurisdiction by that business's home state. That situation would be fundamentally unfair.

The remaining disputes in this cause are factual and were resolved by the findings of fact. The parties agree they contracted together for Whitney to sell Sporting Goods' wares. They even agree Whitney held merchandise belonging to Sporting Goods. The only significant disagreements are over the terms of the contract, the amounts, if any, due, and the value of the returned goods.

In summary, the evidence showed the following. Whitney agreed to sell for Sporting Goods. It, in turn, agreed to pay Whitney commissions on sales and advance him money against the commissions. Whitney's duties called for him to possess samples, returned items, and items for delivery all of which belonged to Sporting Goods and were to be returned at the end of the relationship.

The evidence proved Whitney owed Sporting Goods $8,998.84 in unrepaid advances. He also was obligated to Sporting Goods for $653.50 worth of merchandise.

The six-count complaint, in addition to seeking recovery for breach of contract, pleaded causes of action for an account stated, money lent, and conversion. The first two are merely different ways of characterizing the underlying action to enforce the contract and have been disposed of by the findings on the contract and its breach.

■ The action for conversion seeks compensation for the goods Whitney kept. "[I]nterference with legal rights which are incident to ownership or the wrongful deprivation of the property of the owner . . ." is the essence of conversion. *General Finance Corporation of Jacksonville v. Sexton*, 155 So.2d 159, at 161 (Fla.1st D.C.A. 1963) (footnotes omitted). When Whitney's relationship with Sporting Goods ended in April, 1978, it had the right to possess the goods he held as well as its continuing ownership rights in the goods. He converted the goods. Appropriate compensatory damages are the market value of the property at the time of conversion. *See, e. g., Doral Country Club, Inc. v. Lindgren Plumbing Co.*, 175 So.2d 570 (Fla.3d D.C.A. 1965). Those damages are the same as the damages for breach of contract.

■ Punitive damages are the major reason for the conversion count since as a tort separate from the breach it could be a basis for an award of punitive damages. *Id.* But punitive damages are allowable only "where the circumstances surrounding the conversion are such to show fraud, actual malice, deliberate violence or oppression, or such gross negligence as to indicate a wanton disregard of the rights of others." *Id.* at 571. None of those have been proved. Sporting Goods is not entitled to punitive damages.

The Clerk shall enter a judgment for the Plaintiff of $9,652.34 and interest at the lawful rate on the sum of $8,998.84 from May 1, 1978. Each side shall bear its own costs.