This case involves the issue of whether the trial court properly granted summary judgment for seven nonresident defendants because it lacked in personam jurisdiction over them. The Court granted each defendant's motion to dismiss on the ground that it lacked personal jurisdiction over him. We affirm as to those nonresidents who never were physically present in Alabama; we reverse as to those defendants who did come into Alabama.
 I
Plaintiff Jerry Brooks was employed as a diesel truck mechanic at a Mobile terminal operated by Enterprise Transportation Company (hereinafter Enterprise). In May of 1981, Brooks ruptured a cervical disc while manually lifting transfer truck tires. Brooks and his wife brought suit in the Mobile County Circuit Court on theories of co-employee negligence, breach of contract, breach of implied contract, and products liability. Numerous individuals were named in the complaint as defendants. *Page 350 
The trial court granted summary judgments as to seven of these defendants and entered an appropriate order under Ala.R.Civ.P. 54 (b), making his judgments as to these defendants final. The plaintiffs appealed these judgments.
The affidavits of the plaintiffs and the defendants submitted in connection with the motions to dismiss show that all seven defendants are supervisory level employees of Enterprise or its parent company, Enterprise Companies, Inc., both of which have their corporate offices in Texas, and that each defendant is a resident of Texas. None of them had property in Alabama and their only contacts with Alabama were in connection with their employment. Each defendant's admitted contacts with Alabama and his employee classification was as follows:
(1) DAN DUNCAN:
Chairman of the Board of Enterprise Companies, Inc., Duncan had never been in Alabama, and had never had any personal contacts with the personnel at the Mobile terminal.
(2) FRANK CHAPMAN:
Corporate Risk-Director of Claims for Enterprise Companies Inc., Chapman had never been personally to Alabama but had talked with Renfro, the Mobile terminal manager, on at least five occasions regarding claims made at the facility.
(3) VIM MATTINGLY:
Director of Maintenance for Enterprise, Mattingly had been to the Mobile facility on at least one occasion to check the maintenance program and had had at least two telephone conversations from Texas with Brooks, one of which occurredbefore the injury.
(4) RONALD LEE INLOW:
Safety Supervisor for Enterprise, Inlow had visited the Mobile terminal on at least four occasions between July of 1979 and May of 1982, and at least one of these meetings was termed a "safety meeting." Inlow had had telephone contact with the Mobile terminal on at least three occasions.
(5) DOUGLAS TIPTON:
President of Enterprise, Tipton had been to the Mobile Terminal "no more than five times." On at least one of these visits, he attended what was termed a "safety meeting." He also made monthly telephone contact with the Mobile terminal from Texas.
(6) GERALD MARTINDALE:
"Field Safety Man" for Enterprise, Martindale had visited the Mobile terminal on at least six occasions and had made at least six telephone calls per month to the Mobile terminal from Texas.
(7) ROBERT A. GAINES II:
Also a "Field Safety Man" for Enterprise, Gaines had made at least ten trips to the Mobile terminal and at least two telephone calls a month from Texas.
The affidavits of Brooks dispute to some extent those of the defendants:
(1) DAN DUNCAN:
Brooks claimed Duncan owned the company.
(2) FRANK CHAPMAN:
Brooks did not dispute Chapman's affidavit.
(3) VIM MATTINGLY:
Brooks claimed that he had complained of the safety problem to Mattingly in Texas during a training session and that he had discussed the operation at the Mobile facility with Mattingly on at least one occasion.
(4) RONALD LEE INLOW:
Brooks stated that he had seen Ronald Inlow in Mobile in 1981, and further stated: "[H]e red-tagged one of my trailers, which meant that it had to be fixed immediately. Mr. Inlow was inspecting my shop and taking pictures of it. I asked him to please give me some help. Inlow watched me have to lift tires by myself. He never got me any help."
Brooks also stated: "I talked to Ron Inlow every time he came to Mobile. Every time he came, I told him of the unsafe job conditions that I was being forced to work under, I told him how I had to lift these tires manually, I told him how a *Page 351 
hydraulic dolly would help me, and I told him how I needed some more men to help me. Every time, Inlow told me, I'll check into it and let you know. He never gave me any assistance. . . ."
(5) DOUGLAS TIPTON:
Brooks' affidavit stated that Tipton was in charge of maintenance for the Enterprise Transportation Company. Brooks stated: "He was at numerous meetings we had in Mobile, including safety meetings. At these safety meetings, I pleaded for more help and for better equipment, including a decent hydraulic dolly that would not force me to manually lift truck tires. Mr. Tipton was at these meetings as a representative of management when I asked management for safe equipment and more men to help me. . . ."
(6) GERALD MARTINDALE:
Brooks stated that he met with Gerald Martindale frequently about unsafe working conditions. He stated: "Jerrell [sic] Martindale on many occasions saw me having to lift 100-pound tires over three feet into a spare tire rack on the trailer. He saw me having to manually lift 400-pound tandem wheels. I told him that the homemade dolly that the defendants had given me was worthless and that I was going to get hurt unless they gave me a good hydraulic dolly and some more men to help me. I expressed this frequently to Jerrell [sic] Martindale."
(7) ROBERT A. GAINES II:
Brooks stated he had met with Robert Gaines frequently about unsafe working conditions. He stated: "Robert Gaines on many occasions saw me having to lift 100-pound tires over three feet into a spare tire rack on the trailer. He saw me having to manually lift 400-pound tandem wheels. I told him that the homemade dolly that the defendants had given me was worthless and that I was going to get hurt unless they gave me a good hydraulic dolly and some more men to help me. I expressed this frequently to Robert Gaines."
 II
For convenience and analysis, we will discuss the defendants in two separate groups. Duncan and Chapman, who were never in Alabama, constitute the first group, and the remaining five constitute the second group.
A. The first group, or the "Texas Two":
These defendants argue they are protected by what they refer to as the "Fiduciary Shield Doctrine," which they claim was recognized by this Court in Thames v. Gunter-Dunn, Inc.,373 So.2d 640 (Ala. 1979). In Thames, supra, this Court held that bank officers of an out-of-state bank, who had never been inAlabama and over whom the plaintiff sought in personam
jurisdiction in a suit for breach of a lease, an accounting, and foreclosure of a landlord's lien, or alternatively damages for breach of a lease, were not subject to the jurisdiction of Alabama courts. The Court held:
 "`[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' . . . [Quoting from International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).]
 "While it is sometimes proper to hold that a foreign corporation or bank whose agents acted in Alabama, and caused ramifications in this state, has sufficient contacts with the state to warrant jurisdiction, it is a totally different matter to hold that individual officers have such minimum contacts. In this case the officers had never been present in Alabama, and there was no proof that the appellees were conducting any personal business either through the use of the corporation as an alter ego, or through personal agents in this state. Thus this Court finds that the minimum contacts necessary to extend personal jurisdiction are lacking. [Emphasis added.] *Page 352 
 "Based upon the record, these bank officers performed all acts within the scope of their bank employment. To allow personal jurisdiction over them when they acted solely in the furtherance of their official positions would be to extend the long-arm statute too far. Accordingly, the exercise of jurisdiction over these appellees would be improper under ARCP 4.2."
Thames, supra, at 642-643. See also, Mann v. Frank Hrubetz Co., 361 So.2d 1021, 1022 (Ala. 1978).
Earlier in the Thames opinion, this Court quoted approvingly language from another court's opinion:
 "In Idaho Potato Com'n v. Washington Potato Com'n, 410 F. Supp. 171, 181 (D.Idaho 1975), the court said:
 "`[U]nless there is evidence that the act by the corporate officer was other than as an agent for the corporation, then personal jurisdiction over the corporate officer will not lie. Fashion Two Twenty, Inc. v. Steinberg, 339 F. Supp. 836, 842
(E.D.N.Y. 1971).'"
Thames, supra, at 642.
The Brookses argue that the doctrine recognized in Thames is not applicable to the "Texas Two" because even though never physically present in Alabama, they owed a personal duty to Jerry Brooks which they had either assumed or were delegated responsibility for, and that they breached that duty under the principle set out in Fireman's Fund American Insurance Co. v.Coleman, 394 So.2d 334 (Ala. 1980), and, therefore, that jurisdiction over them could be acquired under Ala.R.Civ.P. 4.2 (a)(2)(D). They further argue that these two defendants should have clearly foreseen that they could be haled into court in Alabama for an injury occurring at the Mobile terminal.
Ala.R.Civ.P. 4.2 (a)(2) reads in pertinent part:
 "Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"* * * *
 "(C) causing tortious injury or damage by an act or omission in this state including but not limited to actions arising out of the ownership, operation or use of a motor vehicle, aircraft, boat or watercraft in this state;
 "(D) causing tortious injury or damage in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
 "(E) causing injury or damage in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such other person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
"* * * *
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
Under Ala.R.Civ.P. 4.2 (a)(2)(A) and 4.2 (a)(2)(C), Thames
found no jurisdiction over nonresident defendants who had never
been in Alabama. Section 4.2 (a)(2)(D) applies to tortious acts
committed outside the state and so is more liberal in permitting Alabama courts to hale nonresidents into court through process issued pursuant *Page 353 
to the "long-arm" rule. The holding in Thames, supra, although not discussing the application of Rule 4.2 (a)(2)(D), seems to be most appropriate to the jurisdictional questions presented here. The United States Supreme Court recently spoke to the issue of whether under another state's "long arm" statute, that state had personal jurisdiction over certain nonresident defendants. See Calder v. Jones, ___ U.S. ___, 104 S.Ct. 1482,79 L.Ed.2d 804 (1984). There, the plaintiff, an entertainer who lived and worked in California and whose case was centered there, brought suit in California, claiming she had been libeled by an article published by the "National Enquirer," a national magazine which has its principal place of business in Florida. The suit named as defendants, in addition to the magazine and its distributing company, the reporter who authored the article and the editor of the magazine. The reporter and editor were residents of Florida and had written and edited the article in Florida. The reporter frequently traveled to California on business unrelated to the article, and the editor had been to California on two occasions, once on a pleasure trip and once to testify in an unrelated trial. The reporter had researched the article in Florida by means of telephone calls to sources in California. The trial court held that there was no personal jurisdiction over the reporter and editor. The California District Court of Appeal reversed. Jonesv. Calder, 138 Cal.App.3d 128, 187 Cal.Rptr. 825 (1982). The rationale of the state appeals court was that even though the actions causing the effects in California were performed outside the state, this did not prevent the state from asserting jurisdiction over a cause of action arising out of those effects. The U.S. Supreme Court approved this reasoning.Calder v. Jones, supra. Justice Rehnquist, speaking for the Court, succinctly summarized the law:
 "The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has `certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 463
[61 S.Ct. 339, 343, 85 L.Ed. 278].' International Shoe Co. v. Washington, 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945). In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.' Shaffer v. Heitner, 433 U.S. 186, 204
[97 S.Ct. 2569, 2580, 53 L.Ed.2d 683] (1977). See also Rush v. Savchuk, 444 U.S. 320, 332
[100 S.Ct. 571, 579, 62 L.Ed.2d 516] (1980). The plaintiff's lack of `contacts' will not defeat otherwise proper jurisdiction, see Keeton v. Hustler Magazine, Inc., [___ U.S. ___, 104 S.Ct. 1473, 79 L.Ed.2d 790
(1984)], but they may be so manifold as to permit jurisdiction when it would not exist in their absence. Here, the plaintiff is the focus of the activities of the defendants out of which the suit arises. See McGee v. International Life Ins. Co., 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223] (1957).
"* * * *
 "Jurisdiction over petitioners is therefore proper in California based on the `effects' of their Florida conduct in California. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 [100 S.Ct. 559, 567, 62 L.Ed.2d 490] (1980); Restatement (Second) of Conflicts of Law § 37."
Calder v. Jones, supra, at ___, 104 S.Ct. at 1486. This "effects" test approved by the Supreme Court appears quite similar to the "consequences" test enunciated in AlabamaWaterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1983). Cf.,Helicopteros Nacionales de Columbia, S.A. v. Hall, ___ U.S. ___, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (holding that the Texas contacts of defendant, a corporation headquartered in Columbia, South America, were not "related to" the cause of action brought in Texas for wrongful death; the deaths occurred in Peru).
Interestingly, the Calder court also discussed an argument quite similar to the *Page 354 
fiduciary shield doctrine argued by the appellees herein:
 "Petitioners argue that they are not responsible for the circulation of the article in California. A reporter and an editor, they claim, have no direct economic stake in their employer's sales in a distant state. Nor are ordinary employees able to control their employer's marketing activity. The mere fact that they can `foresee' that the atticle will be circulated and have an effect in California is not sufficient for an assertion of jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S., at 295 [100 S.Ct. at 566]; Rush v. Savchuk, 444 U.S., at 328-329 [100 S.Ct. at 577]. They do not `in effect appoint the [article their] agent for service of process.' World-Wide Volkswagen Corp. v. Woodson, 444 U.S., at 296 [100 S.Ct. at 566]. Petitioners liken themselves to a welder employed in Florida who works on a boiler which subsequently explodes in California. Cases which hold that jurisdiction will be proper over the manufacturer, Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893 [80 Cal.Rptr. 113], 458 P.2d 57 (1969); Gray v. American Radiator Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), should not be applied to the welder who has no control over and derives no direct benefit from his employer's sales in that distant state.
 "Petitioners' analogy does not wash. Whatever the status of their hypothetical welder, petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must `reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. World-Wide Volkswagen Corp. v. Woodson, 444 U.S., at 297 [100 S.Ct. at 567]; Kulko v. Superior Court, 436 U.S. 84, 97-98 [98 S.Ct. 1690, 1699-1700, 56 L.Ed.2d 132] (1978); Shaffer v. Heitner, 433 U.S. 186, 216 [97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.
 "Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum state must be assessed individually. See Rush v. Savchuk, 444 U.S., at 332 [100 S.Ct. at 579] (`The requirements of International Shoe . . . must be met as to each defendant over whom a state court exercises jurisdiction'). In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." (Emphasis added.)
Calder v. Jones, supra, at ___, 104 S.Ct. at 1487; see also;Columbia Briargate Co. v. First National Bank, 713 F.2d 1052
(4th Cir. 1983) (there the court stated that the fiduciary shield doctrine is not a constitutional doctrine, but is more an equitable doctrine).
These "Texas Two" defendants are charged with "mere untargeted negligence"; thus, assertion of personal jurisdiction over them would offend traditional notions of fair play and substantial justice. Calder v. Jones, supra. See alsoAlabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1983).
B. Mattingly, Inlow, Tipton, Martindale, and Gaines, or the "Alabama Five":
The remaining five defendants also claim to be out of the reach of personal jurisdiction under the doctrine recognized inThames, supra. The holding of *Page 355 Thames, supra, applied only to nonresident defendants who hadnever been in Alabama and who had never "personally `performed any act or omitted to perform any act in Alabama which resulted in tortious injury in Alabama.'" (Emphasis added.) Thames,supra, at 642. These defendants do not fall into the class of defendants who are protected by the holding of Thames, because each had been to Alabama on at least one occasion and each had allegedly performed an act or omitted to perform an act in Alabama which act or omission proximately caused the plaintiffs' injury. The defendants next argue that if Thames,supra, does not apply to them, nevertheless their "contacts with Alabama are simply insufficient to satisfy the requisite `minimum contacts' standard of constitutional due process," citing Hanson v. Denkla, 357 U.S. 235, 78 S.Ct. 1228,2 L.Ed.2d 1283 (1958); Sporting Goods Distributors, Inc. v. Whitney,498 F. Supp. 1088 (N.D.Fla. 1980). The defendants argue that the analysis of Whitney, supra, is particularly appropriate for the five defendants. We set out below all the analysis of theWhitney court:
 "Whitney's contacts with Alabama were few. He made two brief visits to Alabama, both after the contract in dispute was entered and before the alleged breach and conversion. Whitney's only other contacts with Alabama were phone calls and letters to Sporting Goods' Mobile headquarters. The contacts were not important and in no way could be construed as placing Whitney in a position where he relied on and enjoyed the benefits of Alabama's laws. The visits were brief and not important to a business which was carried on primarily through the United States mail. As significant contacts with Alabama the phone calls and letters are particularly inadequate. Interstate communication is today an almost inevitable accompaniment to doing business and cannot fairly be considered a contact justifying exercise of jurisdiction. See, Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc., 597 F.2d 596
(7th Cir. 1979); Aaron Ferer and Sons Co. v. American Compressed Steel Co., 564 F.2d 1206 (8th Cir. 1977). Whitney's two visits are peripherally related to the cause of action. He made them during performance of the contract involved. But they are not related to either the breach or the conversion and were at Sporting Goods' urging.
 "Contacts Whitney did not have are much more significant and demonstrate the constitutional defectiveness of the Alabama judgment. The contract in dispute was made in Florida. Performance was in Florida. Any breach occurred in Florida. In short, every significant event happened in Florida. The significant party-state contacts actually were between Sporting Goods and Florida, not between Whitney and Alabama.
 "The secondary factors also call for finding Whitney's contacts insufficient to justify the Alabama court exercising jurisdiction over him. Alabama has no particular interest in this type of litigation. Thus the situation is not comparable to McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). All the significant events occurred in Florida. The contract was made in Florida; witnesses other than the parties will most likely be found in Florida. The breach occurred in Florida, as did the conversion. Sporting Goods does business in Florida and thus is much better equipped to come to Florida than Mr. Whitney is to go to Alabama."
Whitney, supra, at 1091 (emphasis added).
In Whitney, supra, the employer of a salesman sought to enforce an Alabama judgment against the salesman in a Florida federal district court. The Alabama judgment was based on breach of an employment contract, account, and conversion, and was in regard to property of the employer held by the defendant in Florida. The defendant argued that the Alabama judgment was invalid because the Alabama court lacked personal jurisdiction. The salesman had made an oral contract of employment in Florida and his sales territory *Page 356 
was in Florida. He traveled to his employer's headquarters in Mobile on only two occasions. These trips were instigated by the employer and were for purposes of instruction, merchandise inspection, and picking up samples. The trips were in no way related to the cause of action in the Alabama court. We think the facts of Whitney distinguish it from the instant case. The inquiry in cases such as the one before us is particularly factual. Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690,56 L.Ed.2d 132 (1978). Two recent Alabama cases and one U.S. Supreme Court case are more appropriate to the instant case:Calder v. Jones, supra; Cagle v. Lawson, 445 So.2d 564 (Ala. 1984); Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1983).
In Hanby, supra, this Court upheld personal jurisdiction over a nonresident defendant who had signed a guaranty agreement in Mississippi in connection with a sale of stock of an Alabama corporation. Although most of the documents in connection with the sale were executed in Alabama, this Court did not find these contacts significant in regard to the analysis of personal jurisdiction.
The Court summarized the law:
 "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant. Kulko v. Superior Court of California, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). Under Alabama's long-arm procedure, Rule 4.2, ARCP, as interpreted by Court decisions, an Alabama court may acquire in personam jurisdiction over a nonresident defendant if the defendant has sufficient `minimum contacts' so that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.' International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); World-Wide Volkswagen Corp. v. Woodson 444 U.S. 286, 290, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); Bryant v. Ceat S.p.A., 406 So.2d 376, 377 (Ala. 1981), cert. denied, 456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 466 (1982).
"* * * *
 "This state's long-arm procedure for service of process is not limited to rigid transactional categories. Instead, in personam jurisdiction of an Alabama court under Rule 4.2 (a)(2), ARCP, is as broad as the permissible limits of due process. See DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala. 1977); Schoel v. Sikes Corp., 533 F.2d 930
(5th Cir. 1976). See also Rule 4.2, ARCP, Committee comments.
 "In determining whether the nonresident appellants possessed sufficient contacts with this state for the trial court to obtain in personam jurisdiction, we must necessarily examine all the relevant facts and attendant circumstances of the case. J. Moore, 2 Moore's Federal Practice § 4.41-1 [3] at 4-449.
 "The guaranty agreement which was signed by all of the appellants, including the non-resident appellants, stated as follows:
 "`Guarantee of the performance of the above contract [the "agreement not to compete"] by the shareholders of Alabama Waterproofing Company, Inc., and their spouses: We, for $1.00 and other sufficient consideration, hereby guarantee the performance of the foregoing agreement.'
 "While the `Agreement Not to Compete' was a contract between Alabama Waterproofing Company, Inc., and each of the appellees, the guaranty agreement was a separate contract signed by each appellant. Irrespective of the singular fact that the nonresident appellants actually signed the guaranty in Mississippi, the Court is of the opinion that the trial court could have found that the guaranty signed by each appellant was a significant aspect of the negotiations which occurred in Alabama and that it was foreseeable that appellants' transaction would have consequences in this *Page 357 
state. See Chemical Bank v. World Hockey Ass'n, 403 F. Supp. 1374, 1379 (S.D.N.Y. 1975); see also Bond v. Montego Bay Dev. Corp., 405 F. Supp. 256, 259
(W.D.Tenn. 1975). Furthermore, based on the facts as presented, it is quite evident that the trial court could have found that the nonresident appellants had good reason to expect to be sued in an Alabama court in the event Alabama Waterproofing failed to fulfill its obligations to appellees. See Shaffer v. Heitner, 433 U.S. 186, 217, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 290, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In World-Wide Volkswagen Corp. v. Woodson, supra, the Supreme Court of the United States opined:
 "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. See Kulko v. California Superior Court, supra, 436 U.S., at 97-98, 98 S.Ct., at 1699-1700; Shaffer v. Heitner, 433 U.S., at 216, 97 S.Ct., at 2586, and see id., at 217-219, 97 S.Ct. at 2586-2587 (Stevens, J., concurring in judgment). The Due Process Clause, by ensuring the "orderly administration of the laws," International Shoe Co. v. Washington, 326 U.S., at 319, 66 S.Ct., at 159, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."
"444 U.S., at 297, 100 S.Ct., at 567."
Hanby, 431 So.2d at 144-146.
The more recent case by this Court, Cagle v. Lawson,445 So.2d 564 (Ala. 1984), summarized the law in this manner:
 "Recently, in View-All, Inc. v. United Parcel Service, 435 So.2d 1198 (Ala. 1983), this Court, quoting Professor Moore, summarized the correct constitutional requirements in this area:
 "`The first requirement is that there must be some minimum contact with the state which results from an affirmative act of the defendant. But it is not necessary that the defendant have been in the state or that it have had agents there.
 "`In addition to some minimum contact with the state, it must be fair and reasonable to require the defendant to come into the state and defend that action. . . . [I]n determining what is fair and reasonable, the court may consider factors associated with the doctrine of forum non conveniens, but need not give them overriding importance. . . .
 "`Based as they are on notions of fairness and reasonableness, the Supreme Court decisions do not permit a simple generalization of the rule pertaining to in personam jurisdiction over foreign corporations. . . .
 "`If there are substantial contacts with the state, for example a substantial and continuing business, and if the cause of action arises out of the business done in the state, jurisdiction will be sustained. If there are substantial contacts with the state, but the cause of action does not arise out of these contacts, jurisdiction may be sustained. But if there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction. If there is a minimum of contacts and the cause of action does not arise out of the contacts, there will normally be no basis of jurisdiction, since it is difficult to establish the factors necessary to meet the fair and reasonable test.'
 "`2. J. Moore, Federal Practice, Para. 4.25, pp. 4-258 through 4-267 (2d Ed. 1982).'
"435 So.2d at 1201.
 "Where, as here, there is a minimum of contacts, and the cause of action arises out of the contacts, we consider the quality *Page 358 
and nature of the activity in this state in order to determine whether maintenance of the suit will offend `traditional notions of fair play and substantial justice.' Williams v. Barrington Ford, 402 So.2d 903
(Ala. 1981). Also relevant are the foreseeability by the defendant of being sued in Alabama as a result of his activity in this state and the level of inconvenience to the defendant in defending the suit."
445 So.2d at 565 (Ala. 1984) (emphasis added in Cagle).
We also find that the principle of Calder v. Jones, supra, is applicable, and conclude that the court erred in dismissing the cause as to defendants Mattingly, Inlow, Tipton, Martindale, and Gaines.
On the basis of the authorities cited, we hold that the defendants Mattingly, Inlow, Tipton, Martindale, and Gaines were subject to personal jurisdiction of an Alabama court and that the defendants Duncan and Chapman were not. We, therefore, affirm, in part, and reverse, in part, the action of the trial court, and remand the cause to the circuit court.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.
JONES, SHORES, BEATTY and ADAMS, JJ., concur.