Cristian Dragomir, one of the defendants in an action filed by James Pike in the Tallapoosa Circuit Court, petitions for the writ of mandamus requesting this Court to direct the trial court to vacate its order denying Dragomir's motion to dismiss the claims against him for lack of personal jurisdiction. We grant the petition and issue the writ.
 Factual Background and Procedural History
The underlying case arose from an accident that occurred in December 2008 on Interstate 80 near Iowa City, Iowa. The accident involved a tractor-trailer driven by Pike and a tractor-trailer driven by Dragomir. At the time of the accident, Pike, an Alabama resident, was employed by Mount Vernon Mills, Inc., d/b/a Avondale Trucking ("Avondale"), and was driving a tractor-trailer belonging to Avondale. Dragomir, a resident of Michigan, was employed by CRST Malone, Inc. ("CRST"), and was driving a tractor-trailer he had leased to CRST.
In May 2009, Pike sued Avondale, Dragomir, and CRST, among others, in the Tallapoosa Circuit Court seeking damages for various injuries he sustained in the accident. In August 2009, Dragomir moved to dismiss the claims against him under Rule 12(b)(2), Ala. R. Civ. P., asserting that the trial court did not have personal jurisdiction over him. Pike filed a written response to the motion, and the trial court held a hearing in August 2009 on the motion. The trial court, however, postponed ruling on the motion until the parties could conduct limited discovery on the issue of personal jurisdiction and until a further hearing could be held.
On May 4, 2010, the trial court entered an order setting the matter for trial on August 2, 2010. The trial court's order also required Dragomir to appear on June 8, 2010, for a deposition limited to the issue of personal jurisdiction. After the deposition, Dragomir renewed his motion to dismiss.
The trial court held a hearing on Dragomir's motion to dismiss on June 25 and then gave the parties additional time to submit evidence on the issue of personal jurisdiction. On July 22, 2010, the trial court denied Dragomir's motion. The trial court's order denying the motion states that Dragomir's contacts with Alabama "were continuous and systematic and were purposefully directed toward Alabama" and that "Dragomir could reasonably anticipate being haled into an Alabama court."
Dragomir petitioned this Court for the writ of mandamus and moved for a stay of the trial of the matter pending this Court's resolution of his petition. We granted Dragomir's motion for a stay and ordered Pike to file an answer and brief.
 Standard of Review [1,2] "`"`The writ of mandamus is a drastic and extraordinary writ, to be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala. 1995).' Ex parte Carter, [807 So.2d 534,] 536 [(Ala. 2001)]." *Page 390 
 "`Ex parte McWilliams, 812 So.2d 318, 321
(Ala. 2001). "An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction." Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala. 2002).'"
Ex parte Excelsior Fin., Inc., 42 So.3d 96, 100
(Ala. 2010) (quoting Ex parte Bufkin, 936 So.2d 1042,1044-45 (Ala. 2006)).
 Discussion
In Excelsior Financial, 42 So.3d at 100-02, this Court provided the following summary of the law in Alabama regarding personal jurisdiction:
 "`The extent of an Alabama court's personal jurisdiction over a person or corporation is governed by Rule 4.2, Ala. R. Civ. P., Alabama's "long-arm rule," bounded by the limits of due process under the federal and state constitutions. Sieber v. Campbell, 810 So.2d 641 (Ala. 2001). Rule 4.2(b), as amended in 2004, states:
 "`"(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . ."
 "`In accordance with the plain language of Rule 4.2, both before and after the 2004 amendment, Alabama's long-arm rule consistently has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. Duke v. Young, 496 So.2d 37 (Ala. 1986); DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447 (Ala. 1977).
 As this Court reiterated in Ex parte Mclnnis, 820 So.2d 795, 802 (Ala. 2001) (quoting Sudduth v. Howard, 646 So.2d 664, 667 (Ala. 1994)), and even more recently in Hiller Investments Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115
(Ala. 2006): "Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of the Alabama courts to the limit of due process under the federal and state constitutions." (Emphasis added.)
 "`This Court discussed the extent of the personal jurisdiction of Alabama courts in Elliott v. Van Kleef, 830 So.2d 726, 730 (Ala. 2002):
 "`"This Court has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution. see Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 145
(Ala. 1983), and DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447, 449 (Ala. 1977). See also Rule 4.2, Ala. R. Civ. P., Committee Comments on 1977 Complete Revision following Rule 4.4, under the heading `ARCP 4.2.' (`Subparagraph (I) was included by the Committee-to insure that a basis of jurisdiction was included in Alabama procedure that was coextensive with the scope of the federal due process clause. . . .').
 "`"The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient `minimum contacts' with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident *Page 391 
defendant's contacts is whether the contacts are such that the nonresident defendant ` "should reasonably anticipate being haled into court" ` in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)." `
"Ex parte DBI, Inc., 23 So.3d 635, 643-44 (Ala. 2009) (footnote omitted).
 "`Furthermore, this Court has explained:
 "`". . . The sufficiency of a party's contacts are assessed as follows:
 "`"`Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414
n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.'
 ""`Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala. 1998)(Lyons, J., concurring in the result). . . .
 "`"In the case of either general in personam jurisdiction or specific in personam jurisdiction, `[t]he "substantial connection" between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.' Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)."
 "`Elliott [v. Van Kleef], 830 So.2d [726,] 730-31 [(Ala. 2002)] (emphasis added).'
 "Sverdrup Tech., Inc. v. Robinson, 36 So.3d 34, 42-43 (Ala. 2009)."
Because the underlying accident occurred in Iowa and Dragomir is a resident of Michigan, Pike acknowledges that the trial court could not find personal jurisdiction over Dragomir under a specific-jurisdiction analysis. See, e.g., Ex parteGregory, 947 So.2d 385 (Ala. 2006). Pike contends, however, that Dragomir's contacts with Alabama were "continuous and systematic" and that the trial court therefore could find personal jurisdiction over Dragomir on a general-jurisdiction basis.
In Excelsior Financial, this Court quoted the following regarding the "appropriate analysis and the parties' respective burdens on a personal-jurisdiction issue":
 "`The plaintiff has the burden of proving that the trial court has personal jurisdiction over the defendant. Ex parte Covington Pike Dodge, Inc., 904 So.2d 226 (Ala. 2004).' J.C. Duke Assoes. Gen. Contractors, Inc. v. West, 991 So.2d 194, 196 (Ala. 2008).
 "`"`In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, *Page 392 a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco Bill, P.C., 74 F.3d 253 (11th Cir. 1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990), and "where the plaintiffs complaint and the defendant's affidavits conflict, the . . . court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).'"
 "`Wenger Tree Serv. v. Royal Truck Equip., Inc., 853 So.2d 888, 894 (Ala. 2002) (quoting Ex parte Mclnnis, 820 So.2d 795, 798
(Ala. 2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint" Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247
(N.D.Ala. 2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del. 1995) ("When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.") (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).'" Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala. 2004) (emphasis added; footnote omitted)."
42 So.3d at 103.
Pike's complaint, as amended, alleges that at the time of the accident Dragomir was the "operator" of the tractor-trailer "entrusted to him by . . . CRST . . . while in the line and scope of his employment" with CRST. In support of his motion to dismiss, Dragomir submitted an affidavit stating (1) that he was not a resident of Alabama at the time of the underlying accident; (2) that the underlying accident occurred in Iowa; (3) that he was an independent contractor for CRST; (4) that he owned the tractor-trailer he was driving at the time of the accident but had leased it to CRST; and (5) that his primary contact with CRST was through its Rockport, Indiana, "terminal office." This affidavit testimony was sufficient to shift the burden to Pike to present evidence substantiating that jurisdiction existed over Dragomir. See ExcelsiorFin., 42 So.3d at 103.
In attempting to demonstrate that Alabama has general jurisdiction over Dragomir, Pike cites evidence indicating (1) that Dragomir, before he moved to Michigan, had been an Alabama resident from approximately 1992 to 1998 and (2) that Dragomir had some sporadic contact with Alabama after the accident in Iowa. However, Dragomir's prior residency in Alabama — some 10 years before the accident in Iowa — is temporally too remote to serve as a basis for establishing that Dragomir had "continuous and systematic" contacts with Alabama that would sustain jurisdiction over Dragomir in the underlying action. Ex parte Phil Owens Used Cars, Inc.,4 So.3d 418, 426-27 (Ala. 2008) (rejecting, as too remote to support general jurisdiction, the defendant's contacts with Alabama that had occurred approximately 15 years before the accrual of the *Page 393 
plaintiffs' causes of action). Further, Dragomir's sporadic contacts with Alabama after the accident in Iowa are irrelevant because "`[o]nly contacts occurring prior to the event causing the litigation may be considered.'" Elliott v. VanKleef, 830 So.2d 726, 731 (Ala. 2002) (quoting FarmersIns. Exch. v. Portage La Prairie Mut. Ins. Co.,907 F.2d 911, 913 (9th Cir. 1990)).
Pike also cites, in support of his contention that general jurisdiction over Dragomir exists, Dragomir's business relationship with CRST. Pike argues that Dragomir's "business or work-related contacts with Alabama" were both "substantial and systematic."
The evidence that Pike and Dragomir submitted regarding Dragomir's business relationship with CRST indicated the following. CRST is a Delaware corporation with a "terminal office" in Trussville, Alabama, as well as "terminal offices" in Indiana, Iowa, and Oklahoma. In 2006, Dragomir applied to become a driver for CRST. Dragomir applied at CRST's facility in Rockford, Indiana, and his orientation occurred at that facility. According to the deposition testimony of Randy J. Kopecky, the corporate representative for CRST, Dragomir filled out and signed his application in Rockford, Indiana, and the application was then forwarded to CRST's Trussville office for approval. The Trussville office then notified Dragomir that he had been approved to become a driver for CRST.
CRST initially provided Dragomir with a tractor. Dragomir later purchased the tractor from CRST, with CRST financing the purchase over a three-year period. Dragomir also initially leased a trailer from CRST but later bought his own trailer. Dragomir testified that he entered into the purchase agreement and the lease agreements in Indiana; the materials before us do not indicate whether CRST's Trussville office ultimately considered or approved those agreements.
Dragomir also entered into an "exclusive operator's agreement" with CRST under which he leased his tractor-trailer to CRST and drove only for CRST. The materials before us, however, do not indicate whether CRST's Trussville office considered or approved the exclusive operator's agreement or whether that agreement was made in Indiana. Dragomir's tractor-trailer also had a Michigan license plate and a placard displaying CRST's Department of Transportation ("DOT") registration from the State of Alabama.
As a driver for CRST, Dragomir made deliveries across the United States. On at least a few occasions, he hauled and delivered loads within Alabama. In November 2007, while Dragomir was driving through Alabama to make a delivery in Georgia or South Carolina, Dragomir stopped on the shoulder of an interstate exit. While he was stopped, an Alabama State Trooper issued a citation to Dragomir for improper parking.
Dragomir was required to submit "driver logs" as well as bills of lading to CRST on roughly a weekly basis. Dragomir initially mailed these materials directly to the Trussville office. However, after the first few weeks, Dragomir began submitting his driver logs via TRANSFLO, a faxing system. The materials before us do not indicate where TRANSFLO was located; however, Kopecky testified that TRANSFLO transmitted the logs to another third-party contractor, Rair, which Kopecky stated is located in Wisconsin. Rair made the logs available electronically for viewing by CRST for a six-month period. Dragomir testified that he did not know where the documents he transmitted through TRANSFLO went or which CRST office received or viewed them. The materials before us do not indicate whether Dragomir *Page 394 
continued to mail his bills of lading or whether he also began submitting them to TRANSFLO.
CRST paid Dragomir a commission or "settlement" rather than a salary. At his deposition, Dragomir answered in the affirmative when he was asked if his "payroll came out of Birmingham." However, Dragomir also testified that CRST never issued checks to him. Instead, CRST paid Dragomir by using a "Com Data" card in which funds were deposited in an account that Dragomir could access with a debit card. Kopecky testified that he thought the Trussville office "processed" Dragomir's commission or "settlement." However, the materials before us do not indicate the location from which the funds were sent to the Com Data card or the location of the account in which the funds were deposited.
In summary, the extent of Dragomir's contacts with Alabama pertaining to his employment with CRST was as follows:
 (1) CRST's Trussville office ultimately approved the employment application Dragomir submitted in Indiana and "processed" Dragomir's commissions or "settlements";
 (2) Dragomir's tractor-trailer, which had a Michigan license plate, had a placard displaying CRST's DOT registration from the State of Alabama;
 (3) On at least a few occasions, Dragomir had hauled and delivered loads within Alabama on behalf of CRST;
 (4) Dragomir received a citation in Alabama for improper parking in November 2007 while he was en route to make a delivery in Georgia or South Carolina; and
 (5) Dragomir mailed a few driver logs and bills of lading to CRST's Trussville office when he first began driving for CRST, and Dragomir possibly continued to mail bills of lading, perhaps on a weekly basis, to CRST's Trussville office after he began submitting his driver logs to TRANSFLO.
In support of his argument that these contacts are sufficient to establish general personal jurisdiction over Dragomir, Pike relies upon Leithead v. Banyan Corp., 926 So.2d 1025
(Ala. 2005), and Ex parte Newco Manufacturing Co.,481 So.2d 867 (Ala. 1985).[1] In Leithead, this Court found that the Alabama trial court had general jurisdiction over Banyan Corporation, a foreign corporation, based on the following contacts with Alabama: Banyan's representatives placed an estimated 270 telephone calls to the plaintiff in Alabama; Banyan signed and then mailed an employment contract to the plaintiff in Alabama; Banyan mailed certificates to the plaintiff in Alabama indicating the plaintiffs acquisition of Banyan stock; Banyan had an agreement with the plaintiff under which his "activities in Alabama constituted, at least in part, a business presence by Banyan in [Alabama]"; Banyan employed an Alabama resident as one of its bookkeepers. 926 So.2d at 1031. In Newco, this *Page 395 
Court held that Newco Manufacturing Company was subject to general jurisdiction in Alabama because Newco had engaged in a total of 2,000 transactions in Alabama over a 6-year period with annual sales of between $65,000 and $85,000 during that time. 481 So.2d at 869.
We disagree with Pike's contention that Dragomir's contacts with Alabama are analogous to the substantial contacts the defendant corporations had with Alabama in Leithead
and Newco.[2] Rather, we agree with Dragomir's contention that his contacts with Alabama are more analogous to those of the defendant in Sporting Goods Distributors, Inc.v. Whitney, 498 F.Supp. 1088 (N.D.Fla. 1980).Whitney involved an attempt by Sporting Goods Distributors, Inc., to enforce a default judgment entered in Alabama against James Whitney, a salesman, in an action arising out of an employment contract between Sporting Goods and Whitney. Whitney's contacts with Alabama consisted of two brief visits and an unspecified number of telephone calls and letters directed to Sporting Goods' headquarters in Mobile. TheWhitney court rejected those contacts as sufficient to confer personal jurisdiction, stating:
 "The contacts were not important and in no way could be construed as placing Whitney in a position where he relied on and enjoyed the benefits of Alabama's laws. The visits were brief and not important to a business which was carried on primarily through the United States mail. As significant contacts with Alabama the phone calls and letters are particularly inadequate. Interstate communication is today an almost inevitable accompaniment to doing business and cannot fairly be considered a contact justifying exercise of jurisdiction. See, Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc., 597 F.2d 596 (7th Cir. 1979); Aaron Ferer and Sons Co. v. American Compressed Steel Co., 564 F.2d 1206
(8th Cir. 1977). Whitney's two visits are peripherally related to the cause of action. He made them during performance of the contract involved. But they are not related to either the breach or the conversion and were at Sporting Goods' urging."
498 F.Supp. at 1091.
In the present case, Pike offered evidence indicating that Dragomir's employment application, which was submitted to CRST's facility in Rockford, Indiana, was ultimately forwarded by CRST to its Trussville office for processing and final approval by CRST. However, that isolated contact with Alabama was not sufficient to confer general jurisdiction over Dragomir, particularly because Pike did not offer evidence indicating that Dragomir had had any continuous and systematic contact with Alabama during the course of his employment with CRST. Rather, Dragomir's contact with Alabama was sporadic and isolated. Pike did not offer evidence indicating that Dragomir continuously and systematically used the mail or other inter-state facilities to contact CRST in Alabama; instead, the evidence indicated that Dragomir mailed bills of lading and his driver logs to the Trussville office on only a few occasions at the beginning of his employment. As noted above, the materials before us do not indicate whether, after *Page 396 
he began submitting his driver logs to TRANSFLO, Dragomir continued to mail bills of lading to CRST's Trussville office.see Whitney, supra; see also Leithead, 926 So.2d at 1031 (noting that "` "[t]he use of interstate facilities (telephone, the mail) . . . [is a] secondary or ancillary factor[] and cannot alone provide the `minimum contacts' required by due process" `"(quoting SteelProcessors, Inc. v. Sue's Pumps, Inc. Rentals,622 So.2d 910, 913 (Ala. 1993) (additional citations omitted))). Additionally, Pike has not demonstrated that the decision to "process" Dragomir's commissions or "settlements" at CRST's Trussville facility was because of any contact that Dragomir purposefully directed toward Alabama. In view of these isolated, sporadic contacts with Alabama, it is of no consequence that the tractor-trailer Dragomir was driving at the time of the accident had a placard displaying an Alabama DOT registration. See, e.g., Johnson v. Ward,4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201, 1203 (N.Y. 2005) (rejecting, in a specific-jurisdiction analysis under New York law, the possession of a New York license and registration as sufficient to confer personal jurisdiction over the nonresident defendant who had been involved in an accident in New Jersey). Under these circumstances, Pike has not shown that Dragomir's contacts with Alabama are "continuous and systematic" so as to confer jurisdiction over a claim against him for events occurring outside Alabama. Accordingly, Dragomir has demonstrated a clear legal right to the dismissal of the complaint on the basis that the trial court lacks personal jurisdiction over him.
 Conclusion
Dragomir's petition is granted. The trial court is directed to vacate its order denying Dragomir's motion to dismiss and to enter an order dismissing Pike's claims against Dragomir.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
[1] Pike also relies upon Burger King Corp. v.Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528
(1985). Burger King, however, is addressed to specific jurisdiction rather than general jurisdiction and therefore is not helpful in determining whether Dragomir had "continuous and systematic" contacts with Alabama. See Ex parte Phase IIIConstr., Inc., 723 So.2d 1263, 1266 (Ala. 1998) (Lyons, J., concurring in the result) ("Specific contacts, which give rise to specific personal jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462,472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state.Id.).
[2] In Ex parte Puccio, 923 So.2d 1069, 1076
(Ala. 2005), this Court observed: "Personal jurisdiction over an individual corporate officer or employee `may not be predicated upon jurisdiction over the corporation itself.'" (QuotingThames v. Gunter-Dunn, Inc., 373 So.2d 640, 641 (Ala. 1979).) Thus, our analysis focuses on whether the contacts of Dragomir, an employee of CRST, are sufficient to confer jurisdiction over Dragomir. The question of the sufficiency of contacts to confer jurisdiction over CRST is not before us.